UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 7/29/2026

GATEWAY COMMERCIAL FINANCE, LLC,

Plaintiff,

-against-

MONTEFIORE HEALTH SYSTEM, INC., and
MONTEFIORE MEDICAL CENTER,

Defendants.

No. 25-CV-4942 (NSR)

**OPINION & ORDER**

NELSON S. ROMÁN, United States District Judge:

Plaintiff Gateway Commercial Finance, LLC ("Plaintiff" or "Gateway") brings this action against Defendants Montefiore Health System, Inc. ("MHS") and Montefiore Medical Center ("MMC") (collectively, "Defendants"), asserting claims for breach of contract and account stated arising from Defendants' alleged failure to remit payment on certain accounts receivable assigned to Gateway pursuant to a factoring agreement.

Gateway specifically alleges that Gordon Maintenance Services, Inc. ("GMS") entered into a services agreement with MMC, assigned its right to payment under that agreement to Gateway, and that Defendants failed to remit payment on certain matured and unpaid invoices despite receiving notice of the assignment. Gateway further alleges that MMC breached the services agreement and that both MMC and MHS are liable for the outstanding balance as account debtors under the Uniform Commercial Code (the "UCC"). Pending before the Court is Defendants'

Motion to Dismiss the Complaint (the "Motion") pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] (ECF No. 21.)

For the following reasons, Defendants' Motion is GRANTED in part and DENIED in part.

**BACKGROUND**

The following background is drawn from the Complaint, and the Court accepts the allegations as true and draws all reasonable inferences in Plaintiff's favor. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

**I. The Factoring Industry**

Before delving into the underlying dispute, it would prove useful to lay a foundation for the "factoring business." (Compl. ¶ 11.) The factoring business involves, in relevant part, the purchasing of Accounts[2] from businesses ("Factoring Clients") with whom it has formed a contractual relationship, the terms of which are generally reflected in invoices. (*Id.*) The entity that purchases Accounts is referred to as the "Factor" or "Purchaser," which, in this case, is Plaintiff Gateway Commercial Finance, LLC. (*Id.* ¶ 12.) Conversely, the entity from whom Accounts are purchased is referred to as the "Factoring Client" or "Seller," which, as described in more detail below, is non-party Gordon Maintenance Services, Inc. (*Id.*) The Factoring Client's customer for whom it has performed services or sold goods and to whom an invoice is issued to evidence the terms of sale and request payment is commonly referred to as the "Customer" or "Account

[1] The Court refers to the parties' motion papers as follows: (1) Defendants' memorandum of law in support of their Motion, ECF No. 22 ("Defs.' Mem."); (2) Plaintiff's memorandum of law in opposition, ECF No. 24 ("Pl.' Opp."); and (3) Defendants' reply memorandum of law, ECF No. 23 ("Defs.' Reply").

[2] As discussed in more detail below, the Court relies on New York law in resolving the present Motion. As such, the Court refers to the New York UCC where relevant. Under the UCC "Account" is "a right to payment of a monetary obligation, whether or not earned by performance, (i) for property that has been or is to be sold . . . , (ii) for services rendered." N.Y. U.C.C. § 9-102(a)(2) (McKinney).

Debtor,"[3] which, in this case, Gateway alleges are Defendants Montefiore Health System, Inc. and Montefiore Medical Center. (*Id.*)

With that foundation in mind, the Court turns to the factual allegations giving rise to this dispute.

## II. Gateway's Factoring Agreement with GMS

Gateway is a Florida limited liability company in the factoring business. (Compl. ¶ 1.) On or about February 5, 2021, GMS entered into a written agreement with Gateway, titled the "Master Purchase and Sales Agreement." (*Id.* ¶¶ 12–13.) As a matter of background, GMS was, at all relevant times, a company that provided janitorial services. (*Id.* ¶ 15.) Because the Master Purchase and Sales Agreement was amended on several occasions, the Court refers to the Master Purchase and Sales Agreement and its amendments collectively as the "Factoring Agreement." (*Id.*)

Pursuant to the Factoring Agreement, GMS offered to sell to Gateway Accounts principally arising from GMS's provision of janitorial services. (*Id.*, Ex. A. § 1.) Gateway, in accordance with the Factoring Agreement, purchased Accounts from GMS that it elected to purchase thereunder, including all of GMS's rights, title to, and interest in those Accounts purchased (the "Purchased Accounts"), and, in exchange, Gateway made purchase price payments to GMS. (*Id.* ¶ 16.) In addition, in order to secure all of GMS's Obligations[4] owed to Gateway under the Factoring Agreement, GMS granted to Gateway a first priority security interest in various assets

---

[3] Under the UCC, "Account Debtor" is "a person obligated on an account." N.Y. U.C.C. § 9-102(a)(3) (McKinney).
[4] The Factoring Agreement defines "Obligations" as "all present and future obligations owing by Seller to GCF whether or not for the payment of money, whether or not evidenced by any note or other instrument, whether direct or indirect, absolute or contingent due or to become due, joint or several, primary or secondary, liquidated or unliquidated, secured or unsecured, original or renewed or extended, whether arising before, during or after the commencement of any Bankruptcy Case in which Seller is a Debtor, including but not limited to any obligations arising pursuant to letters of credit or acceptance transactions or any other financial accommodations." (Compl., Ex. A. § 30.)

of GMS identified in the Factoring Agreement as collateral, which included, in relevant part, all of GMS's Accounts, together with other assets and all Proceeds[5] thereof (collectively, the "Collateral"). (*Id.* ¶ 17, Ex. A §§ 9, 30.)

The Factoring Agreement likewise provides that, until all of the Obligations under the Factoring Agreement have been paid in full, GMS granted Gateway an irrevocable power of attorney authorizing Gateway, among other things, to notify account debtors of the assignment of Accounts, collect payments directly from account debtors, and enforce GMS's rights with respect to Purchased Accounts. (*Id.* ¶¶ 20–22, Ex. A §§ 11–13.) The Factoring Agreement further provides that GMS must hold any payments it receives on Purchased Accounts in trust for Gateway and immediately remit those proceeds to Gateway. (*Id.* ¶ 23, Ex. A § 12.)

Gateway alleges that its security interest attached to the Collateral pursuant to and in accordance with UCC § 9-203. (*Id.* ¶ 18.) Gateway similarly alleges that on or about February 5, 2021—the same day Gateway and GMS entered into the Factoring Agreement—Gateway perfected its first priority ownership interest in the Purchased Accounts and its first priority security interest in all Collateral, including all Accounts by filing the UCC-1 Financing Statement with the New York State Secretary of State. (*Id.* ¶ 19.)

## III. The Services Agreement and the Alleged Nonpayment

Turning to the relationship between GMS and Defendants, Gateway alleges that GMS and MMC entered into an agreement under which GMS agreed to provide janitorial services at various MMC facilities (the "Services Agreement"). (*Id.* ¶ 25.) As relevant here, MMC is a large, academic medical center and the University Hospital for Albert Einstein College of Medicine in

---

[5] The UCC defines "proceeds" to include, among other things, "whatever is acquired upon the sale, lease, license, exchange, or other disposition of collateral" and "whatever is collected on, or distributed on account of, collateral." N.Y. U.C.C. § 9-102(a)(64)(A)–(B) (McKinney).

the Bronx, New York, and part of the Montefiore Health System in New York. (*Id.* ¶ 24.) Gateway further alleges that, although it requested a copy of the Services Agreement from GMS, GMS advised that no written agreement existed. (*Id.* ¶ 25.) According to the Complaint, the payment terms governing GMS's janitorial services were reflected in the invoices GMS issued to MMC. (*Id.*)

In connection with the Factoring Agreement, Gateway alleges that, with respect to Purchased Accounts arising from GMS's janitorial services, GMS was required to submit to Gateway schedules of Accounts identifying the invoices it offered for sale (the "Schedule of Accounts"). (*Id.* ¶ 26.) Based on GMS's performance of janitorial services, GMS allegedly issued invoices to MMC, payment on which became due within sixty days of issuance. (*Id.* ¶ 27.) Although the invoices were issued to MMC, Gateway alleges that MHS served as the payer with respect to those invoices and, together with MMC, jointly assumed the role of an Account Debtor under the UCC. (*Id.* ¶¶ 28–29.) Gateway likewise alleges that, pursuant to the Factoring Agreement, it acquired Purchased Accounts arising from GMS's provision of janitorial services to Defendants totaling approximately $1,543,377.07 (the "Matured and Unpaid Invoices"). (*Id.* ¶ 30.) Gateway asserts that the Matured and Unpaid Invoices remain unpaid. (*Id.*)

On or about March 4, 2021, Gateway transmitted a Notice of Assignment to MMC and MHS directing that all present and future payments on GMS's Accounts be remitted directly to Gateway. (*Id.* ¶¶ 33–34.) Gateway alleges that, after Defendants received the Notice of Assignment, they could discharge their payment Obligations on the Matured and Unpaid Invoices only by remitting payment to Gateway. (*Id.* ¶¶ 35–37.) On or about March 17, 2025, Gateway, through counsel, sent Defendants a written demand seeking payment of the Matured and Unpaid Invoices. (*Id.* ¶ 38.) Gateway also alleges that, despite its demand and its alleged right to receive

payment under the Factoring Agreement and the Notice of Assignment, Defendants have failed and refused to remit payment on the Matured and Unpaid Invoices. (*Id*. ¶ 39.)

Based on the foregoing allegations, Gateway asserts claims for breach of contract and account stated, seeking to recover at least $1,543,377.07, together with any additional unpaid invoices identified during discovery, prejudgment interest, costs, and such other relief as the Court deems just and proper. (*Id*. ¶¶ 40–55.)

## PROCEDURAL HISTORY

Gateway commenced this action on June 12, 2025. (ECF Nos. 1, 5, 6.) Defendants moved to dismiss the Complaint on August 11, 2025. (ECF No. 20, at 2–4.) The Court waived the pre-motion conference and set a briefing schedule. (*Id*. at 1.) Defendants served their opening papers on September 18, 2025. (ECF Nos. 21–22.) Gateway served its opposition papers on October 20, 2025. (ECF No. 24.) Defendants served their reply papers on November 4, 2025. (ECF No. 23.)

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When there are well-pleaded factual allegations in the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. While the district court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, it is "not bound to accept as true a legal conclusion couched as a factual allegation," or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555).

The Second Circuit "deem[s] a complaint to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference . . . and documents that plaintiffs either possessed or knew about and upon which they relied in bringing the suit." *Rotham v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000) (internal citations omitted). The critical inquiry is whether a plaintiff has pled sufficient facts to nudge their claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. A motion to dismiss will be denied where the allegations "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## DISCUSSION

Defendants move to dismiss Gateway's claims for breach of contract and account stated arising from Defendants' alleged failure to remit payment arising from the Services Agreement. The Court first addresses the parties' threshold dispute concerning choice-of-law. The Court then considers whether Gateway has plausibly alleged a breach of contract claim, including whether the Complaint adequately alleges (1) the existence of an enforceable services agreement, (2) satisfaction of the applicable conditions precedent, and (3) MHS's contractual liability under that agreement. Finally, the Court addresses whether Gateway has plausibly alleged an account stated claim.

### I. Choice of Law

As a threshold matter, the parties dispute whether the Court should undertake a choice-of-law analysis for the purpose of resolving the pending Motion. Defendants assert that New York law governs this action because they are domiciled in New York and GMS's janitorial services were performed in New York. (Defs.' Mem. at 6.) Gateway, by contrast, maintains that it does not concede that New York law governs this action but argues that the Court need not undertake a

conflict-of-law analysis because any choice-of-law issue is immaterial given the uniformity of the UCC. (Pl. Opp. at 11.) Defendants nevertheless maintain that the Court should undertake a conflict-of-law analysis. (Defs.' Reply at 2.)

"When a federal district court sits in diversity, it generally applies the law of the state in which it sits, including that state's choice-of-law rules." *In re Coudert Bros. LLP*, 673 F.3d 180, 186 (2d Cir. 2012) (cleaned-up). Under New York's choice-of-law rules, federal courts sitting in New York are generally required to undergo a conflict-of-laws analysis only where there is an actual conflict. *See Int'l Bus. Machines Corp. v. Liberty Mut. Ins. Co.*, 363 F.3d 137, 143 (2d Cir. 2004) (citing *In re Allstate Ins. Co.*, 81 N.Y.2d 219, 233, 597 N.Y.S.2d 904, 613 N.E.2d 936 (N.Y. 1993)). "In the absence of substantive difference, however, a New York court will dispense with choice-of-law analysis; and if New York law is among the relevant choices, New York courts are free to apply it." *Int'l Bus. Machines Corp.*, 363 F.3d at 143 (citing *J. Aron & Co. v. Chown*, 231 A.D.2d 426, 647 N.Y.S.2d 8 (N.Y. App. Div. 1996)).

It is unnecessary, at least at this juncture, to engage in a full choice-of-law analysis. Although Plaintiff does not concede that New York law governs, it does not contend that the law of any other jurisdiction should be applied for the purposes of this Motion. (Pl. Opp. at 11.) Plaintiff instead argues that the Court need not resolve the choice-of-law issue because no material conflict exists given the uniformity of the UCC. (*Id.*) Indeed, district courts have recognized that "it is unnecessary to determine . . . which state's laws govern the transactions at issue" where "each state has adopted the U.C.C., and the Court finds its application . . . as determinative of the motions before it." *Arthur Glick Truck Sales, Inc. v. Sutphen East Corp.*, 914 F. Supp. 2d 529, 538 n.11 (S.D.N.Y. 2012) (quoting *United States v. 328 Pounds, More or Less, of Wild Am. Ginseng ("328 Pounds of Ginseng")*, 347 F. Supp. 2d 241, 246 (W.D.N.C. 2004)); *see also Greenstreet Fin., L.P.*

*v. GS-Graces, LLC*, 2011 WL 7555324, at *7 (S.D.N.Y. Apr. 18, 2011) ("as no substantive difference exists in the law governing . . . between Florida and New York for the purposes of [the] UCC, the Court will dispense with the choice-of-law analysis.").

Neither Plaintiff nor Defendants identify any material conflict between New York law and the law of any other potentially applicable jurisdiction that would affect resolution of the Motion.[6] (*See* Defs.' Mem. at 6; Pl. Opp. at 11; Defs.' Reply at 2.) The Court therefore need not undertake a full choice-of-law analysis and will apply New York law for purposes of resolving the present Motion. Should a material choice-of-law issue arise as this litigation progresses, Gateway shall identify the substantive law upon which it relies.

**II. Breach of Contract**

The Court next considers whether Plaintiff plausibly alleges a breach of contract claim based on Defendants' alleged refusal to remit payment on the Matured and Unpaid Invoices arising from the Services Agreement. Under New York law, there are four elements to a breach of contract claim: "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Lapa v. JP Morgan Chase Bank, N.A.*, 2023 WL 4706827, at *3 (S.D.N.Y. July 22, 2023) (citing *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996)). Defendants principally challenge the first and second elements, arguing that the Services Agreement is not an enforceable contract and that Plaintiff has failed to plausibly allege satisfaction of the applicable conditions precedent. (Defs.' Mem. at 9–11.) Defendants similarly argue that Plaintiff fails to plausibly allege that MHS is contractually liable under the Services Agreement. (*Id*. at 7–9.) The Court addresses each argument in turn.

---

[6] In any event, the Complaint identifies Florida as the only other jurisdiction whose law could plausibly apply because Gateway's principal place of business is located there. (Compl. ¶ 1.) Florida, like New York, has adopted Article 9 of the Uniform Commercial Code. *Compare* N.Y. U.C.C. § 9-102(a)(2), (3), (64) (McKinney), *with* Fla. Stat. § 679.1021(1)(b), (c), (pp).

**A. Existence of an Agreement**

Defendants first argue that Gateway fails to plausibly allege the existence of an enforceable contract between the parties. (Defs.' Mem. at 10.) Specifically, Defendants contend that Gateway's reliance on the Services Agreement is deficient because (1) the Complaint expressly alleges that no written Services Agreement exists; (2) the Complaint fails to plead the material terms of any enforceable agreement; and (3) the invoice exemplar attached to the Complaint does not establish the existence or terms of the purported Services Agreement. (Defs.' Mem. at 10–11; Defs.' Reply at 2–5.) Gateway responds that the Complaint plausibly alleges the existence of an enforceable Services Agreement notwithstanding the absence of a written contract because the parties' course of dealing, GMS's performance of janitorial services, and the invoices issued to MMC sufficiently allege the existence and material terms of the agreement. (Pl. Opp. at 19–22.)

To show that an enforceable contract existed, a claimant "must plead facts surrounding the formation of the contract such as the date the parties entered into the contract, the major terms of the contract, the parties to the contract, and that the party to be bound assented to the contract." *Fuji Photo Film U.S.A., Inc. v. McNulty*, 669 F. Supp. 2d 405, 412 (S.D.N.Y. 2009) (citing *Berman v. Sugo LLC*, 580 F. Supp. 2d 191, 202 (S.D.N.Y. 2008)). A breach of contract claim "that fails to allege facts sufficient to show that an enforceable contract existed between the parties is subject to dismissal." *Berman*, 580 F. Supp. 2d at 202. Furthermore, the claimant must allege the specific provisions of the contract upon which the breach of contract claim is based. *Fuji Photo Film*, 669 F. Supp. 2d at 412 (citing *Sheridan v. Trustees of Columbia Univ. In City of New York*, 296 A.D.2d 314, 315, 745 N.Y.S.2d 18 (1st Dep't 2002); *Matter of Sud v. Sud*, 211 A.D.2d 423, 424, 621 N.Y.S.2d 37 (1st Dep't 1995)).

At the outset, the Court rejects Defendants' contention that the Services Agreement is not an enforceable contract because it is "neither attached to the Complaint nor described in the Complaint." (Defs.' Mem. at 10.) Under New York law—which Defendants insist the Court apply—"parties are free to enter into a binding contract without memorializing their agreement in a fully executed document." *Persh v. Petersen*, 2015 WL 6393049, at *2 (S.D.N.Y. Oct. 22, 2015) (quoting *Winston v. Mediafare Entm't Corp.*, 777 F.2d 78, 80 (2d Cir. 1985)). The absence of a written agreement, standing alone, is not fatal at the pleading stage.[7]

Nor is the Court persuaded that the Complaint fails to adequately allege the material terms of the Services Agreement. At the pleading stage, a "breach of contract [claim] must 'at a minimum, allege the terms of the contract, each element of the alleged breach and the resultant damages in a plain and simple fashion.'" *Pennolino v. Cent. Prods. LLC*, 2023 WL 3383034, at *13 (S.D.N.Y. May 11, 2023) (quoting *Warren v. John Wiley & Sons, Inc.*, 952 F. Supp. 2d 610, 624 (S.D.N.Y. 2013)). A "material term" in a contract is a "provision dealing with a significant legal issue such as subject matter, price, payment, quantity, quality, duration, or the work to be done." *Berkson v. Gogo LLC*, 97 F. Supp. 3d 359, 392 (E.D.N.Y. 2015) (quoting Black's Law Dictionary 1608 (9th ed. 2009)); *see also* 17A Am. Jur. 2d Contracts § 190 (2015) (A "material term" of a contract includes "subject matter, price, payment terms, quantity, duration, compensation, and the dates of delivery and production, so that the promises and performance to be rendered by each party are reasonably certain"). Courts assessing the material terms of a contract at the pleading stage generally examine whether the complaint provided sufficient detail

[7] The Court similarly rejects Defendants' argument that Gateway fails to plausibly allege the existence of an oral agreement. (Defs.' Reply at 4.) Defendants principally rely on *Krolick v. Sloane*, where the court determined that plaintiff failed to plausibly allege the existence of an oral agreement because the material terms were "ambiguous at best . . . especially with regard to what [Plaintiff] promised to do for Defendants." 2021 WL 5280990, at *4 (S.D.N.Y. Nov. 12, 2021). The instant action is different, however. As explained above, Gateway plausibly alleges the material terms of the Services Agreement and attaches an exemplar invoice reflecting the janitorial services GMS allegedly performed for MMC. (Compl. ¶¶ 25–30, 43–44, Ex. C.) *Krolick* is therefore not persuasive.

on the contract's "major terms." *See, e.g.*, *Lim v. Radish Media Inc.*, 2023 WL 2440160, at *2 (2d Cir. Mar. 10, 2023) (acknowledging that a plaintiff asserting a breach of contract claim must provide factual allegations regarding major terms); *Shake Shack Enters., LLC v. Brand Design Co., Inc.*, 708 F. Supp. 3d 515, 523 (S.D.N.Y. 2023) (same); *Fuji Photo Film*, 669 F. Supp. 2d at 412 (same). The Complaint does so here.

The Complaint alleges that GMS and MMC entered into a Services Agreement pursuant to which GMS would provide janitorial services at several MMC facilities. (Compl. ¶ 25.) Read as a whole, the Complaint plausibly alleges the material terms of that agreement, including the parties, the subject matter, the services to be performed, the applicable payment terms, GMS's performance, and Defendants' alleged failure to remit payment on the Matured and Unpaid Invoices. (*Id.* ¶¶ 25–30, 43–44.) These allegations, taken together, are sufficient to plausibly allege the existence of an enforceable Services Agreement because they encompass the material terms relevant to Gateway's breach of contract claim. *See L'Amore Consulting LLC v. SBS Servs., Inc.*, 2024 WL 3925953, at *3 (S.D.N.Y. Aug. 23, 2024) (denying motion to dismiss breach of contract claim where the complaint plausibly alleged the existence of a services agreement, the plaintiff's performance under that agreement, and the defendant's failure to remit payment for the services rendered); *Negotiatus Corp. v. Viola Inc.*, 2025 WL 416021, at *5 (S.D.N.Y. Feb. 6, 2025) (denying motion to dismiss breach of contract where plaintiff alleged, among other things, that defendant accepted services and then eventually stopped paying).

To the extent Defendants contend that Gateway improperly attached additional invoice exemplars to its opposition papers, (Defs.' Reply at 4), the Court need not consider those materials in resolving the present Motion. The one invoice exemplar attached to the Complaint, coupled with the factual allegations outlining the Services Agreement's material terms, provides further

factual support for Plaintiff's allegation that GMS and MMC entered into an enforceable Services Agreement. Indeed, the attached invoice exemplar provides a detailed description of GMS's services performed at a MMC facility and also includes Gateway's remittance address, stating "[a]ll invoices have been sold, assigned, and payable only to: Gateway Commercial Finance, Inc." (Compl., Ex. C.) The attached invoice exemplar likewise includes the signature of a MMC authorized representative. (*Id.*) Although the invoice exemplar does not, by itself, establish the existence or complete terms of the Services Agreement, it is consistent with and lends factual support to the Complaint's allegations regarding the contractual relationship between GMS and MMC.[8] *See, e.g.*, *Copperwood Cap. LLC v. JAG Staffing & Consulting Servs., Inc.*, 2021 WL 919871, at *3 (E.D.N.Y. Feb. 10, 2021), *report and recommendation adopted*, 2021 WL 918312 (E.D.N.Y. Mar. 10, 2021) (plaintiff "sufficiently pleaded existence of valid contracts through the acknowledged invoices and the breach thereof"); *Dodge St., LLC. v. Livecchi*, 32 F. App'x 607, 611 (2d Cir. 2002) (summary order) ("Under New York law, even if a party subjectively does not intend to be legally bound, if his actions, gauged by an objective standard, support the conclusion that he accepted the agreement, he will be legally bound to honor the contract."); *Apex Oil Co. v. Vanguard Oil Serv. Co.*, 760 F.2d 417, 422 (2d Cir. 1985) ("[T]he existence of a contract may be established through conduct of the parties recognizing the contract." (citations omitted)).

[8] Defendants' reliance on *First Bank & Tr. v. Coventina Constr. Corp.* is likewise misplaced. Although *First Bank* also arose in the context of a factoring agreement, the court nevertheless examined whether the complaint plausibly alleged the existence and material terms of the underlying contract. *See* 2019 WL 4120363, at *6 (E.D.N.Y. July 23, 2019), *report and recommendation adopted*, 2019 WL 4089393 (E.D.N.Y. Aug. 26, 2019). There, the court concluded that the plaintiff failed to plausibly allege the existence of an enforceable contract because, although purchase orders may constitute contracts, the complaint failed to allege what those purchase orders contained or otherwise plead the material terms of the parties' agreement. *Id.* The Court specifically explained that "although purchase orders can constitute contracts, without any information about what is contained in the alleged purchase orders, Plaintiff's conclusory assertion that payment was owed is insufficient to establish the existence and breach of a contract." *Id.* That is not the case here. As discussed, Gateway identifies the parties to the Services Agreement, alleges the nature of the services to be performed, pleads the applicable payment terms, alleges GMS's performance, and attaches an exemplar invoice reflecting the janitorial services allegedly provided to MMC. (Compl. ¶¶ 25–30, 43–44, Ex. C.)

Viewed as a whole, the Complaint plausibly alleges the existence of an enforceable Services Agreement and its material terms.[9] Defendants' Motion on this ground is therefore denied, at least as to MMC.

**B. Performance of Conditions Precedent**

Defendants next argue that Plaintiff fails to plausibly allege satisfaction of conditions precedent, including adequate notice, as required by Federal Rule of Civil Procedure 8(a). (Defs.' Mem. at 10.) Specifically, the Complaint generally alleges that "[a]ll conditions precedent to the bringing of this action have been performed, excused, and/or waived." (Compl. ¶ 10.) Gateway responds that this allegation satisfies Federal Rule of Civil Procedure 9(c). (Pl. Opp. at 16.) Gateway further contends that Defendants conflate contractual notice of default with the statutory notice requirements of UCC § 9-406. (*Id*. at 17–19.) Gateway maintains that the Complaint adequately alleges notice because it pleads that it delivered the Notice of Assignment to Defendants, that Defendants received the Notice of Assignment, and that the invoices themselves contained language satisfying UCC § 9-406. (*Id*.)

A condition precedent is "an act or event, other than a lapse of time, which, unless the condition is excused, must occur before a duty to perform a promise in the agreement arises." *Raspberry Holdings LLC v. NextBank Int'l Inc.*, 2025 WL 438270, at *7 (S.D.N.Y. Feb. 7, 2025) (quoting *Oppenheimer & Co. v. Oppenheim, Appel, Dixon & Co.*, 660 N.E.2d 415, 418 (N.Y. 1995)). As framed by the parties, the relevant condition precedent concerns Gateway's delivery

---

[9] For the first time in their reply papers, Defendants question whether the Factoring Agreement can support a breach of contract claim. (Defs.' Reply at 5–6.) The Court, however, need not consider arguments made for the first time in a reply brief. *See Ruggiero v. Warner-Lambert Co.*, 424 F.3d 249, 252 (2d Cir. 2005). Even if the Court were to consider the argument, it would not alter the outcome. The Complaint describes, in detail, the Factoring Agreement between Gateway and GMS and alleges that, pursuant to that agreement Gateway acquired GMS's rights in the Accounts at issue. (Compl. ¶¶ 11 – 23, Ex. A.) At this stage, the Court must accept these well-pleaded allegations as true. *See Iqbal*, 556 U.S. at 678. Moreover, the New York Court of Appeals has recognized that, for purposes of UCC Article 9, "a security interest is an assignment," such that a secured creditor may enforce an assignor's receivables against an account debtor. *See Worthy Lending*, 39 N.Y.3d at 101.

of the Notice of Assignment to Defendants and Defendants' receipt of that Notice pursuant to UCC § 9-406(a). In the context of New York UCC § 9-406(a), an account debtor may discharge an obligation "by paying the assignor until, but not after, the account debtor receives a notification, authenticated by the assignor or the assignee, that the amount due or to become due has been assigned and that payment is to be made to the assignee." *IIG Cap. LLC v. Archipelago, L.L.C.*, 36 A.D.3d 401, 402, 829 N.Y.S.2d 10 (2007) (citation omitted).

"In pleading conditions precedent, it suffices to allege generally that all conditions precedent have occurred or been performed," Fed. R. Civ. P. 9(c), but a party must allege sufficient facts to render those allegations plausible. *See Dervan v. Gordian Grp. LLC*, 2017 WL 819494, at *6 (S.D.N.Y. Feb. 28, 2017) ("the occurrence or performance of a condition precedent—to the extent that it need be pled as a required element of a given claim—must be plausibly alleged in accordance with Rule 8(a)"); *Uncas Int'l LLC v. Crimzon Rose, Inc.*, 2017 WL 2839668, at *3 (S.D.N.Y. June 26, 2017) ("pleading of a plaintiff's own performance is subject to the same pleading standard as other allegations, *i.e.*, the plausibility requirement set out in *Iqbal*."); *Ashland Glob. Holdings Inc. v. Valvoline, Inc.*, 2022 WL 219997, at *6 (S.D.N.Y. Jan. 25, 2022) (a "threadbare statement, which merely recites the language of the [contract], does not contain any factual matter that can support . . . an inference" that the conditions precedent have been satisfied).

Defendants are correct that Plaintiff may not merely allege that "[a]ll conditions precedent to the bringing of this action have been performed, excused, and/or waived." (Compl. ¶ 10.) Standing alone, this conclusory allegation, "does not provide the sufficient factual matter that would allow the court to draw the reasonable inference that all conditions precedent have been satisfied." *Ashland*, 2022 WL 219997, at *6 (quoting *O.F.I. Imports Inc. v. Gen. Elec. Cap. Corp.*, 2017 WL 3084901, at *5 (S.D.N.Y. July 20, 2017)). As other district courts have made clear,

"post-*Iqbal*, Rule 9(c)'s command that conditions precedent be alleged 'generally' requires plaintiffs to allege plausibly that they have satisfied conditions precedent." *O.F.I. Imports*, 2017 WL 3084901, at *5. The Court's inquiry, however, does not end there. As demonstrated by *Ashland*—Defendants' principal authority—the Court may consider the Complaint as a whole in assessing whether Plaintiff has plausibly alleged satisfaction of the applicable conditions precedent. *See* 2022 WL 219997, at *7–8. There, the court proceeded beyond the complaint's general allegation regarding conditions precedent and examined whether the complaint otherwise alleged facts plausibly demonstrating satisfaction of the applicable contractual conditions precedent. *See id*. Courts have likewise considered the complaint as a whole in determining this issue. *See, e.g.*, *Dervan*, 2017 WL 819494, at *6 (reviewing complaint and incorporated documents in determining whether contractual conditions precedent were adequately alleged); *Uncas Int'l*, 2017 WL 2839668, at *3 (same); *Comerica Leasing Corp. v. Bombardier Inc.*, 2019 WL 11027701, at *8–13 (S.D.N.Y. Sept. 30, 2019) (same).

Here, unlike the complaint in *Ashland*, Plaintiff alleges more than the boilerplate assertion contained in paragraph 10 of the Complaint. For instance, the Complaint alleges Gateway delivered a Notice of Assignment to MMC and MHS on approximately March 4, 2021, that MMC and MHS received the Notice of Assignment, and that, following receipt, Defendants could discharge their payment Obligations only by remitting payment to Gateway pursuant to UCC § 9-406. (Compl. ¶¶ 31–39.) The Complaint also alleges that the invoices issued to Defendants contained language notifying Defendants that the right to receive payment of the Matured and Unpaid Invoices had been assigned from GMS to Gateway. (*Id.* ¶ 32.) These factual allegations are sufficient to plausibly allege that Plaintiff satisfied the statutory notice requirement challenged by Defendants.

Defendants' remaining arguments are likewise unpersuasive at this stage. Defendants principally contend that the Notice of Assignment attached to the Complaint is undated, reflects an incorrect address for MMC, contains no indication of the method of delivery, and does not establish that Defendants actually received it. (Defs.' Mem. at 10–11.) The Complaint nevertheless alleges that Gateway delivered the Notice of Assignment to Defendants and that Defendants received it. (Compl. ¶¶ 33–34.) At this juncture, the Court must accept those well-pleaded factual allegations as true and draw all reasonable inferences in Plaintiff's favor. *Iqbal*, 556 U.S. at 678. Whether Plaintiff can ultimately prove that Defendants received legally sufficient notice under UCC § 9-406 presents a factual question that cannot be resolved on a Rule 12(b)(6) motion. *See IIG Cap.*, 36 A.D.3d at 402 ("Defendants' denial of receipt [of the notice of assignment pursuant to UCC § 9-406] does not afford a basis for dismissal . . . given the clear factual dispute"); *Wacker v. JP Morgan Chase & Co.*, 678 F. App'x 27, 30 (2d Cir. 2017) ("fact-specific questions cannot be resolved on the pleadings") (quoting *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012)); *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006) (holding that a court may not resolve factual disputes against a plaintiff on a motion to dismiss).

The Complaint therefore plausibly alleges satisfaction of the conditions precedent challenged by Defendants, namely the statutory notice requirement under UCC § 9-406. Defendants' Motion on this ground is denied.

**C. MHS's Contractual Liability**

Defendants further argue that, even if the Court concludes that Plaintiff has plausibly alleged the existence of an enforceable Services Agreement, the breach of contract claim against MHS must nevertheless be dismissed because the Complaint fails to allege that MHS was a party

to that agreement. (Defs.' Mem. at 7–9.) Specifically, Defendants contend that the Complaint alleges only that GMS entered into a Services Agreement with MMC, while relying on impermissible group pleading and conclusory allegations to impose contractual liability on MHS. (*Id.*) Defendants also contend that, absent allegations establishing that MHS was a party to the Services Agreement, any purported oral promise by MHS to satisfy MMC's contractual Obligations would be unenforceable under New York's Statute of Frauds as a promise to answer for the debt of another. (*Id.* at 9.) Gateway responds that the Complaint plausibly alleges MHS's liability under the Services Agreement because MHS received the Notice of Assignment, acted as the account debtor, remitted payments on invoices issued pursuant to the Services Agreement, and is jointly and severally liable for the unpaid invoices. (Pl. Opp. at 12–16.)

As an initial matter, the Court is unpersuaded by Defendants' Statute of Frauds argument. Under New York law, an agreement that is not memorialized in writing and pertains to "a special promise to answer for the debt, default or miscarriage of another person" is generally unenforceable unless memorialized in a writing signed by the party to be charged. N.Y. Gen. Oblig. Law § 5-701(a)(2) (McKinney). That provision, however, applies only where a party undertakes a collateral obligation to answer for the debt of another, rather than where the party is alleged to be primarily liable for the underlying obligation. *See De Biase v. Amazon.com, Inc.*, 2026 WL 890412, at *4 (E.D.N.Y. Apr. 1, 2026) (quoting *Reddy v. Mihos*, 160 A.D. 3d 510, 515 (2018)); *see also Martin Roofing, Inc. v. Goldstein*, 60 N.Y.2d 262, 265 (1983), *cert denied, Martin Roofing, Inc. v. Goldstein*, 466 U.S. 905 (1984) (same). Plaintiff does not allege that MHS orally guaranteed MMC's Obligations under the Services Agreement. To the contrary, Plaintiff contends that MHS itself became obligated to remit payment as an Account Debtor under UCC §§ 9-102(a)(3) and 9-607. (Pl. Opp. at 13–15.) Whether Plaintiff has plausibly alleged that MHS

became independently obligated under the Services Agreement, or otherwise qualifies as an Account Debtor under the UCC, presents a distinct question from whether MHS made an oral guaranty subject to the Statute of Frauds.

With that said, however, Plaintiff's reliance on the UCC does not resolve the threshold issue before the Court. Plaintiff principally relies on *Worthy Lending LLC v. New Style Contractors, Inc.*, in which the New York Court of Appeals held that a secured creditor could enforce an existing account debtor's payment obligation pursuant to UCC §§ 9-406 and 9-607 following a valid assignment. *See* 39 N.Y.3d 99, 181 N.Y.S.3d 166, 201 N.E. 3d 783 (2022). The *Worthy Lending* court, however, did not consider whether a party that did not enter into the underlying contract could nevertheless be deemed an account debtor or otherwise become bound by that agreement. *Id*. That is the question presented here. The Court therefore turns to the dispositive question: whether the Complaint plausibly alleges that MHS was a party to, or otherwise became bound by, the Services Agreement.

To state a breach of contract claim against MHS, Gateway must plausibly allege the existence of an enforceable contract between the parties. *Berman*, 580 F. Supp. 2d at 202. New York law recognizes that only parties in privity of contract may enforce or be held liable under a contract. *Barkley v. Audient Cap. GP LTD*, 2026 WL 1649212, at *3 (S.D.N.Y. June 8, 2026) (quoting *Freeford Ltd. v. Pendleton*, 857 N.Y.S.2d 62, 67 (N.Y. App. Div. 1st Dept. 2008)). Stated differently, absent privity or its equivalent, an entity who is not a party to a contract generally cannot be held liable for its breach. *Black Car & Livery Ins., Inc. v. H & W Brokerage, Inc.*, 813 N.Y.S.2d 751, 752 (App. Div. 2d Dep't 2006); *Smith v. Fitzsimmons*, 584 N.Y.S.2d 692, 695 (App. Div. 4th Dep't 1992) ("As a general rule, privity or its equivalent remains the predicate for imposing liability for nonperformance of contractual obligations.").

The Complaint falls short of this standard. Although Gateway alleges that MHS acted as the "payer," remitted payments issued pursuant to the Services Agreement, received Gateway's Notice of Assignment, and "jointly assumed the role of account debtor," (Compl. ¶¶ 28–29, 34), it does not allege that MHS entered into, assumed, or otherwise agreed to be bound by the Services Agreement. In fact, the Complaint expressly alleges that "GMS and MMC entered into" the Services Agreement. (Compl. ¶ 25.) Nor does the Complaint allege that MHS participated in negotiating the agreement, assented to its terms, or otherwise undertook MMC's contractual Obligations. Indeed, the invoice exemplar attached to the Complaint only refers to MMC and not MHS. (*Id.*, Ex. C.) Without more, these allegations do not plausibly establish that MHS "manifested an intent to be bound by the contract.'" *MBIA Ins. Corp. v. Royal Bank of Canada*, 706 F. Supp. 2d 380, 396 (S.D.N.Y. 2009) (citing *Horsehead Indus., Inc. v. Metallgesellschaft AG*, 239 A.D.2d 171, 657 N.Y.S.2d 632, 633 (1997)). Gateway's assertion that discovery may reveal additional facts concerning MHS's relationship with MMC and GMS does not alter the conclusion. (Pl. Opp. at 9–10.) A plaintiff may not rely on the prospect of discovery to cure an otherwise deficient pleading. *See, e.g.*, *Warren*, 952 F. Supp. 2d at 615 ("Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.") (quoting *Iqbal*, 556 U.S. at 679–79).

In sum, the Complaint plausibly alleges the existence of a Services Agreement between GMS and MMC. It does not, however, plausibly allege that MHS was a party to, assumed, or otherwise became bound by that agreement. Plaintiff therefore fails to state a breach of contract claim against MHS, and Defendants' Motion to dismiss is granted to that extent.

**III. Account Stated**

The Court next turns to Gateway's account stated claim. Defendants notably do not separately analyze this claim and instead incorporate it into their arguments concerning Plaintiff's breach of contract claim. (*See generally* Defs.' Mem.; Defs.' Reply.) The Court nevertheless addresses the claim separately because it presents distinct legal issues, particularly with respect to MHS's alleged liability.

Under New York law, an "account stated is nothing more or less than a contract express or implied between the parties . . . which they have come to[ ] regarding the amount due on past transactions." *Rodkinson v. Haecker*, 248 N.Y. 480, 485, 162 N.E. 493, 495 (1928); *see also Givens v. De Moya*, 146 N.Y.S.3d 291, 294 (App. Div. 2021) ("'[A]n account stated is an agreement between parties, based upon their prior transactions, with respect to the correctness of the account items and the specific balance due.'"). Stated differently, an account stated is a "promise by a debtor to pay a stated sum of money which the parties had agreed upon as the amount due." *Arch Specialty Ins. Co. v. TDL Restoration, Inc.*, 2021 WL 1225447, at *9 (S.D.N.Y. Mar. 31, 2021) (quoting *Air Atlanta Aero Eng'g Ltd. v. SP Aircraft Owner I, LLC*, 637 F. Supp. 2d 185, 197 (S.D.N.Y. 2009)). Consistent with that principle, "[a] cause of action for an account stated has been described as 'an alternative theory of liability to recover the same damages allegedly sustained as a result of the breach of contract.'" *Episcopal Health Servs., Inc. v. Pom Recoveries, Inc.*, 31 N.Y.S.3d 113, 114–15 (App. Div. 2016) (quoting *A. Montilli Plumbing & Heating Corp. v. Valentino*, 935 N.Y.S.2d 647, 649 (App. Div. 2011)).

To state a claim for an account stated under New York law, a plaintiff must allege that "(1) an account was presented; (2) it was accepted as correct; and (3) [the] debtor promised to pay the amount stated." *Cvar Von Habsburg Grp., LLC v. Decurion Corp.*, 2020 WL 4577440, at *3 (S.D.N.Y. Aug. 10, 2020) (quoting *IMG Fragrance Brands, LLC v. Houbigant, Inc.*, 679 F. Supp.

2d 395, 411 (S.D.N.Y. 2009)). An agreement to pay may be implied where a party retains an account without objection for a reasonable period of time or makes partial payment on the account. *LeBoeuf, Lamb, Greene & MacRae, L.L.P. v. Worsham*, 185 F.3d 61, 64 (2d Cir. 1999); *Auburn Custom Millwork, Inc. v. Schmidt & Schmidt, Inc.*, 143 A.D.3d 1297, 1300 (4th Dep't 2016).

An account stated, however, presupposes an underlying indebtedness between the parties. "The viability of such a claim depends on 'the existence of some indebtedness between the parties, or an express agreement to treat the statement as an account stated. It cannot be used to create liability where none otherwise exists.'" *Diesel Props S.r.l. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 54–55 (2d Cir. 2011) (quoting *M. Paladino, Inc. v. J. Lucchese & Son Contracting Corp.*, 247 A.D.2d 515, 516, 669 N.Y.S.2d 318, 319 (2d Dep't 1998)).

Here, Plaintiff's account stated claim against MMC appears duplicative of its breach of contract claim. The Second Circuit has explained that "[t]wo claims are duplicative of one another if they arise from the same facts and do not allege distinct damages." *NetJets Aviation, Inc. v. LHC Commc'ns*, LLC, 537 F.3d 168, 175 (2d Cir. 2008) (cleaned-up). District courts have likewise held that "a claim is duplicative . . . [where] 'relief sought . . . is identical'" to that sought under a breach of contract claim. *Townsquare Media, Inc. v. Regency Furniture, Inc.*, 2022 WL 4538954, at *22 (S.D.N.Y. Sept. 28, 2022), *on reconsideration in part*, 2023 WL 6289984 (S.D.N.Y. Sept. 27, 2023) (quoting *Premier Steel, Inc. v. Hunterspoint* Steel LLC, 2010 WL 5248583, at *4 (S.D.N.Y. Dec. 16, 2010)); *see also 4Kids Ent., Inc. v. Upper Deck Co.*, 797 F. Supp. 2d 236, 249 (S.D.N.Y. 2011) (holding that an account stated claim may not be used simply as another means of recovering under a disputed contract); *Martin H. Bauman Assocs., Inc. v. H & M In'l Transp., Inc.*, 171 A.D.2d 479, 485 (1st Dep't 1991) (same). That is the case here. Both causes of action

seek to recover the balance of the Matured and Unpaid Invoices arising from the Services Agreement. (Compl. ¶¶ 46, 55.)

With that said, however, this action is only at the pleading stage. The Court will therefore not dismiss Gateway's account stated claim against MMC at this point in the litigation because "it is possible that the Court could find, at a later stage, that no valid contract existed." *Negotiatus*, 2025 WL 416021, at *7; *see also Rynasko v. New York Univ.*, 63 F.4th 186, 210 (2d Cir. 2023) (Parker, J., concurring in part) ("Alternative pleading is, of course, available and in some instances appropriate . . . . Eventually, however, the court will determine if the contract is valid and covers the subject matter at issue, and at that point the plaintiff must elect a remedy."); *Kaiburr Sys. LLC v. Tower 05, Inc.*, 2023 WL 7183183, at *1–2 (N.D.N.Y. Nov. 1, 2023) (denying motion to dismiss account stated and quantum meruit claims where scope of agreement was unclear at motion to dismiss phase); *Mediterranean Shipping Co. (USA) Inc. v. Huatai USA LLC*, 2020 WL 4750260, at *2 (S.D.N.Y. Aug. 17, 2020) ("While Plaintiff may not ultimately recover the same damages twice, it may maintain both theories[, namely account stated and breach of contract,] at [the motion to dismiss] stage, where the Court has not yet ruled on the validity of any contract."). Because this action remains at the pleading stage, the Court will not dismiss Gateway's account stated claim against MMC as duplicative.

The Court does not reach the same conclusion with respect to MHS, however. For the reasons discussed above, the Complaint does not plausibly allege that MHS was a party to, or otherwise became bound by, the Services Agreement. Nor does the Complaint plausibly allege that MHS owed the underlying debt reflected in the Matured and Unpaid Invoices. Because an account stated claim "cannot be used to create liability where none otherwise exists," Plaintiff cannot establish MHS's liability merely by alleging that MHS received invoices, remitted

payments, or retained Gateway's Notice of Assignment. *Diesel Props.*, 631 F.3d at 54–55 (2d Cir. 2011) (citation omitted). The account stated claim against MHS is therefore dismissed.

## IV. Leave to Amend

Finally, Gateway requests that if the Court dismisses any of the Complaint, it be granted leave to amend. (Pl. Opp. at 22.) Defendants do not appear to respond to Gateway's request. (*See generally* Defs.' Reply.)

Courts are to "freely give leave [to amend a pleading] when justice so requires." Fed. R. Civ. P. 15(a)(2). The Second Circuit has counseled courts not to dismiss a complaint with prejudice prior to issuing a ruling that highlights the precise defects of those claims. *Williams v. Citigroup Inc.*, 659 F.3d 208, 214 (2d Cir. 2011) (per curiam). If a complaint's deficiencies are "substantive" as opposed to "inadequately or inartfully" pled, an opportunity to replead would be "futile" and "should be denied." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Milanese v. Rust—Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001) ("Leave to amend should be granted unless there is evidence of undue delay, bad faith, undue prejudice, or futility.")

Here, because this is Gateway's first complaint, the Court declines to dismiss the claims with prejudice. *See Williams*, 659 F.3d at 214. The Court cannot conclude at this stage that amendment would necessarily be futile. The dismissed claims are therefore dismissed without prejudice, and Gateway is granted leave to file an amended complaint to cure the deficiencies identified in this Opinion and Order.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is GRANTED in part and DENIED in part. Defendants' Motion is DENIED with respect to Gateway's breach of contract and account stated claims against Defendant Montefiore Medical Center. Defendants' Motion is

GRANTED with respect to Gateway's breach of contract and account stated claims against Defendant Montefiore Health System, Inc., and those claims are dismissed without prejudice.

Because this is Gateway's first complaint, Gateway is granted leave to file an Amended Complaint solely with respect to the claims dismissed without prejudice by this Opinion and Order. If Gateway chooses to do so, it shall file an Amended Complaint by September 4, 2026. Defendants shall answer or otherwise respond to any Amended Complaint by October 2, 2026. If Gateway fails to file an Amended Complaint within the time permitted, and cannot show good cause to excuse such failure, the claims dismissed without prejudice by this Opinion and Order will be deemed dismissed with prejudice without further order of the Court.

The Clerk of Court is respectfully directed to terminate the Motion at ECF No. 21.

SO ORDERED.

Dated: July 29, 2026
White Plains, NY

Nelson S. Román, U.S.D.J.